#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Herlinda Apantenco, | ) |
|                 Plaintiff, | )  Case No. 21-2517 |
| v. | ) |
| Nicholas J. Tansey, *and* The Tansey Law Firm, PLLC | )  **COMPLAINT** |
| | )  *Jury Trial Demanded* |
|                 Defendants. | ) |

Plaintiff, Herlinda Apantenco, by and through counsel, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and alleges:

#### SUMMARY

1. Defendants Nicholas J. Tansey ("Tansey") and the Tansey Law Firm ("Tansey Firm") (together, "Defendants") run a debt collection practice. They attempted to collect an alleged debt from Plaintiff.

2. Plaintiff does not speak English, and the Defendants were aware of that at all times relevant to this litigation.

3. Knowing that the Plaintiff did not speak English, the Defendant failed to take any steps to ensure that a certified translator was available to assist him in speaking with her about his case.

4. In April 2020, Tansey approached the Plaintiff and, despite knowing there was a language barrier, tried to communicate with her about her case. Plaintiff is unsure of all that Tansey said to her because she did not understand it, but knows he told her it was her

1

responsibility to prove to him that, as she alleged, she did not owe the debt because she had been a victim of identity theft.

5.  And Defendants have asserted that Plaintiff made meaningful concessions during that conversation, and that those concessions make *any* defense of the underlying action frivolous.

6.  But extracting such concessions through a language barrier without meaningful understanding — particularly when translation services are readily available without any cost — is a deceptive and abusive collection practice.  *See, e.g., Ehrich v I.C. Sys*., 681 F Supp 2d 265, 273 (EDNY 2010) ("protection is, nonetheless, needed here to prevent abusive debt collection practices that specifically target non-English speaking consumers").

7.  Thus, Plaintiff is entitled to all the remedies available under the FDCPA.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

9.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and § 2202.

10. Venue is proper in this district because Defendants conduct business in this district, and the events giving rise to Plaintiff's claims took place in this district.

## PARTIES

11. Plaintiff Herlinda Apantenco ("Plaintiff" or "Ms. Apantenco," "she"/"her") at all relevant times been a resident of Shelby County, Tennessee.

12. Defendants attempted to collect an alleged delinquent consumer debt from Plaintiff.

13. Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

14. Defendant Tansey Firm is a Tennessee-based law firm with its principal place of business located at 4711 Poplar Avenue, Suite 204 Memphis, TN 38117.  Upon information and belief, its principal and whole owner is Defendant Tansey.

15. The Tansey Firm does business in the State of Tennessee in that it seeks to collect debts from consumers in the State of Tennessee, including in this district.

16. Upon information and belief, the Tansey Firm is engaged in high-volume debt collection and collects or attempts to collect upon hundreds, if not thousands of consumer debts every year.

17. The Tansey Firm acts as a debt collector as defined by § 1692a(6) of the FDCPA because it uses the instrumentalities of interstate commerce including the telephone and/or the mails in its business, the principal purpose of which is the collection of alleged consumer debts.

18. The Tansey Firm also acts as a debt collector as defined by § 1692a(6) of the FDCPA as it regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

19. Tansey is an attorney licensed in the state of Tennessee.

20. Tansey has final, supervisory authority over the Tansey Firm's collections practice.

21. Tansey acts as a debt collector as defined by § 1692a(6) of the FDCPA because he uses the instrumentalities of interstate commerce including the mails in his business, the principal purpose of which is the collection of defaulted consumer debts.

22. Tansey also acts as a debt collector as defined by § 1692a(6) of the FDCPA as he regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

23. Tansey, acting personally and on behalf of the Tansey Firm, attempted to collect alleged debts from Plaintiff.

24. Upon information and belief, both Tansey and the Tansey Firm's principal business endeavor is the collection of debts, and they both regularly attempt to collect debts alleged to be due to another person or entity.

## FACTS

25. According to Defendants, Plaintiff incurred two debts by cashing "checks" by mail, sent by a company called "Republic Finance."

26. In fact, the "checks" sent — despite posing as checks — is an ultra-high interest loan, with extortionate terms.  *See generally*, Steven Nicasto, "Banks and lenders are sending out pre-approved checks in the mail that seem like free cash, but there's a huge catch," BUS. INSIDER (Dec. 14, 2018).

27. These loans are often called "live checks."  The United States Senate has introduced several bills in the past few years aimed at barring this deceptive practice, though none has passed yet.

28. Live checks are sent out to consumers like Plaintiff, with the intention that they cash them without thinking about it — because they believe what appears to be a check is, in fact, a check.

29. Plaintiff, however, did not receive the checks Defendants allege she cashed.

4

30. At the time the checks were sent, Plaintiff was in an abusive romantic relationship.

31. At that time, Plaintiff's then-husband, Jorge Apantenco Sanchez, was in a practice of intercepting and filtering all of Plaintiff's mail.

32. Mr. Sanchez intercepted and "cashed"[1] the live checks sent to Plaintiff by Republic Finance.

33. Plaintiff was not aware that her then-husband "accepted" the terms of the live check.

34. Mr. Sanchez stole money from Plaintiff, as well as her identity.

35. That theft included Plaintiff's stimulus check, which theft the Plaintiff reported to the IRS.

36. Plaintiff did not receive any money from Republic Finance.

37. Upon information and belief, Mr. Sanchez falsely signed Plaintiff's name to the live checks.

38. Defendants filed suit on behalf of Republic Finance, seeking to collect on the debts they alleged arose from the live checks, also alleging Plaintiff had cashed the live checks.

39. That case is styled *Arco Collection Services LLC v. Herlinda Apantenco*, Shelby County General Sessions Civil Court No. 2027637.

40. Upon information and belief, the complaint in *Arco* was wholly drafted by Tansey, acting as an attorney for the Tansey Firm.

41. The alleged debts arose from Republic Finance's live check loan practice, and are thus both "debt[s]" as that term is defined by § 1692a(5) of the FDCPA.

---

[1] Under the terms of the live checks, "cashing" the checks is deemed to be acceptance of the loan terms, triggering extremely high interest payments.

42. Before the Plaintiff obtained representation from her current attorney, she appeared multiple times in the Shelby County General Sessions Civil Court, sometimes with a person who spoke English and Spanish to assist her. In April 2020, Plaintiff appeared alone, without a person to act as a translator.

43. In Tennessee, any attorney may consult the publicly available list of court certified interpreters to obtain the attendance of an expert interpreter trained in interpreting court and legal proceedings and arrange for their attendance at any court date, for which the interpreter will be compensated by the Administrative Office of the Courts. That list and instructions are maintained only in English and in no other language.

44. Despite knowing that the April court date would be attended by a person from whom he was attempting to collect a debt who did not speak English, Defendant Tansey did not obtain an interpreter to assist at court that day.

45. In addition, in Shelby County, the General Sessions Civil Court, which meets at 140 Adams Avenue in Memphis, is approximately one city block away from the General Sessions Criminal Court, located in the court and jail complex at 201 Poplar Avenue.

46. At least one Spanish interpreter is always available at 201 Poplar during the hours of court, and the Spanish interpreters often travel the short distance between 201 Poplar and 140 Adams to translate in the courts at the two locations.

47. Tansey did not go to 201 Poplar and inquire about the availability of a Spanish interpreter before communicating with Plaintiff.

48. Plaintiff speaks only limited English.

49. Tansey knew Plaintiff spoke only limited English when he initiated a conversation with her.

50. Tansey approached the Plaintiff. She did not understand the majority of what he said to her in English, except that he berated her for not "doing her job" to prove that she did not owe the debt. Tansey had encountered the Plaintiff on previous occasions related to this case and knew that she required a translator to understand English.

51. Defendants' actions have caused Plaintiff harm.

52. Being berated by the Defendant has made Plaintiff nervous and caused her emotional distress.

53. And the prospect of continuing to have to fight in court — and at a trial — to unwind the severe damage her ex-husband worked in her life has itself caused Plaintiff serious emotional distress, anxiety, and pain.

54. Plaintiff's counsel has had to — and will continue to need to — incur additional time to address the issues

55. Counsel will need to brief the admissibility of — and Plaintiff will be subjected to cross-examination about — the conversation Defendants had with her, outside the presence of her counsel.

56. Plaintiff will have to pay for gas, transportation, and other incidental expenses in various hearings related to the supposed admission.

57. Plaintiff's counsel has already spent time on research related to the admissibility of Tansey's testimony about that admission, as well as about whether there are attorney-witness issues, among other things.

58. Mr. Tansey's belief that Plaintiff made an admission is also, upon information and belief, the sole thing keeping the *Arco* matter in litigation. That is, upon information and belief, if Defendants had not improperly obtained what they believe to be an admission of the debt, in

the face of the history of prior identical forgery by Mr. Sanchez, they would not have any basis to continue the *Arco* matter.

59. Thus, upon information and belief, at a minimum, Defendants' settlement position in *Arco* would be substantially weaker without the supposed admission — and in turn, that position would mean the *Arco* matter would be much less likely to continue.

60. On further information and belief, for the same reasons, Defendants' violation of the FDCPA is causally connected to Plaintiff's need to continue litigating the *Arco* case.

61. And since Plaintiff does not owe the debt alleged in the *Arco* case, she will litigate that case — meaning all of the harm alleged above is that is not yet accrued is at a minimum certainly impending.

## COUNT I

*FDCPA—ALL DEFENDANTS*

62. Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

63. The FDCPA gives rise to liability for even a "single act." *Gamby v. Equifax Info. Servs. LLC*, 462 F. App'x 552, 556 (6th Cir. 2012).

64. And as the Supreme Court has held, the FDPCA "does apply to lawyers engaged in litigation." *Heintz v Jenkins*, 514 US 291, 294 (1995).

65. Defendants spoke to a party they knew to speak very limited English in English, rather than in Spanish through a translator.

66. Courts have found that "target[ing]" "Spanish-speaking consumers" with communications in English is a deceptive practice barred by 15 U.S.C. § 1692e. *Ehrich v I.C. Sys.*, 681 F Supp 2d 265, 273 (EDNY 2010). *See also, Dykes v Portfolio Recovery Assoc., LLC,*

111 F Supp 3d 739, 743-744 (ED Va 2015) (same, for Spanish communications targeting English-speaking consumers).

67. Thus, Defendants have violated the FDCPA.

68. Upon information and belief, Defendants have no procedures or practices designed to prevent such violations.

69. As a result of the Defendants' violations of the FDCPA, Plaintiff is entitled to an award of statutory damages, costs, and reasonable attorney fees.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against Defendants, for the Count alleged above for:

A. All statutory and actual damages available under 15 U.S.C. § 1692k(a)(2);
B. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);
C. Such other or further relief as the Court deems proper.

Dated: August 11, 2021.

                                        Respectfully Submitted,

                                               /s/
                                      _____

J. Remy Green[2]
**COHEN&GREEN P.L.L.C**.
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com

/s/ Sally M. Joyner
Sally M. Joyner
Mid-South Immigration Advocates
PO Box 11185

---

[2] Application for admission forthcoming.

9

Memphis, TN 38111
Tel. (901) 244-4367
Fax (901) 545-5680
joyner@miamemphis.org